T.C. Memo. 1996-10


UNITED STATES TAX COURT


ESTATE OF BERT B. RAPP, DECEASED,
RICHARD L. RAPP, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19107-92.          Filed January 18, 1996.


Dennis N. Brager and Gerald E. Lunn, Jr., for petitioner.

Clifton B. Cates III and Nancy C. McCurley, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge: Respondent determined the following deficiency in, and additions to, petitioner's Federal estate tax:

|  | Additions to Tax | |
| Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
|  |  | 50% interest on: |
| $1,685,271 | $84,264 | $1,685,271 |

Unless stated otherwise, all section references are to the Internal Revenue Code in effect for the date of the decedent's death.

After concessions, the sole issue for decision is whether petitioner is eligible to deduct, as an allowance of marital deduction under section 2056(a), the value of certain property distributed to a testamentary trust for the benefit of the decedent's surviving spouse. This issue turns on whether the subject property is "qualified terminable interest property" within the meaning of section 2056(b)(7).

FINDINGS OF FACT

The parties have stipulated some of the facts that are pertinent to this case. The stipulation of facts filed by the parties and the exhibits attached thereto are incorporated herein by this reference.

The decedent, Mr. Bert B. Rapp, died on February 23, 1988. He was a California resident at that time. The executor of the decedent's estate, Mr. Richard Rapp, the decedent's son, was also a California resident when the

instant petition was filed. Originally, the decedent's other son, Mr. David Rapp, served as coexecutor, but he relinquished that position before this action was commenced.

In addition to his two sons, the decedent was survived by his wife of approximately 35 years, Mrs. Laura Rapp. The decedent first met his wife in 1946, approximately 7 years before they were married. At that time, the decedent owned an automobile service station and garage. Mrs. Rapp was employed, but she also worked for the decedent in the evenings and sometimes on weekends. The decedent did not pay Mrs. Rapp for her services. After the Rapps were married, Mrs. Rapp continued to work for the decedent until the birth of their sons. After that time, Mrs. Rapp was not employed outside the home.

Over the years, the decedent's business enterprises prospered. His principal business was Motor Transportation Service Systems (MTSS), a corporation engaged in vehicle leasing. He was president of MTSS and owned one-third of its outstanding stock worth $938,194 at the time of his death. In addition to MTSS, the decedent was a partner in several partnerships, and he owned shares in mutual funds,

several parcels of real property, promissory notes, and shares of stock in other corporations.

Mrs. Rapp managed the household budget and paid household expenses. She did not take an active role in either her husband's business or his investment activities. The decedent put several investments and at least one venture in his wife's name, but Mrs. Rapp played no active role in their management. The decedent was satisfied with Mrs. Rapp's management of their household expenses.

In 1972, Mrs. Rapp was involved in an automobile accident. As a result of the accident, she was in a coma for 8 days, and she spent a total of 5 months in the hospital. The accident left her with poor vision and other medical problems. After the accident, Mrs. Rapp often complained about her physical limitations. She believed that she would never again be able to work. The decedent believed that the accident greatly affected his wife's personality and was partially to blame for some of the marital discord that the Rapps later suffered.

The decedent was not an attorney or an accountant. In conducting his business affairs, he relied on the advice of professionals. However, he attempted to become knowledgeable about the legal and tax consequences of

his business transactions.  The decedent consulted frequently with Mr. Laurence Clark, an attorney, and with Mr. George Lippert, a certified public accountant.  Neither Mr. Clark nor Mr. Lippert is an expert in estate planning.

Most of the decedent's legal affairs were handled by Mr. Clark, who is licensed to practice law in the State of California.  Mr. Clark engaged in a general practice of law.  He maintained a professional and personal relationship with the decedent until the decedent's death.

Mr. Clark had minimal experience in estate planning and in handling estates with assets of more than $1.2 million.  Nevertheless, in 1978, he prepared wills for both the decedent and Mrs. Rapp (the 1978 wills).  These wills were essentially identical.  Each of the 1978 wills provided that all household furniture and furnishings, clothing, personal effects, and automobiles of the testator were to be given to the surviving spouse.  All other property of the testator was given to the testator's two sons to be held in trust during the life of the surviving spouse.  As cotrustees, Messrs. David and Richard Rapp were given the power to disburse such amounts from the principal and income of the trust estate as they would decide is necessary "in their absolute discretion" for the "health,

education and support" of the surviving spouse. Upon the death of the surviving spouse, the trust was to cease and the cotrustees were directed to distribute the balance of the trust estate to the testator's two sons or their living issue. In 1982, the decedent executed a codicil that amended his 1978 will by changing the last successor trustee and the last successor executor but made no change in the substantive provisions of the will.

Mr. Clark also prepared the wills that the decedent and Mrs. Rapp executed on July 9, 1986 (the 1986 wills). These wills revoked the 1978 wills but were substantively the same, with only minor changes in language and form, and with changes in the identity of successor executors and alternate trustees. The decedent's and Mrs. Rapp's 1986 wills were identical to one another in all material aspects.

Like the 1978 wills, the 1986 wills provide that all of the household furniture and furnishings, clothing, personal effects, and automobiles of the testator are given to the surviving spouse. All other property of the testator is given to the testator's two sons, Richard Rapp and David Rapp, to be held in trust during the life of the surviving spouse. The trustee of the trust is given the

power to disburse such amounts from the principal and income of the trust as the trustee decides is necessary "in his absolute discretion" for the "proper health, education and support" of the surviving spouse. Article Fifth (b) of the decedent's will states as follows:

> If at any time, in the absolute discretion of the Trustee or co-Trustees, my wife, LAURA B. RAPP, should for any reason be in need of funds for her proper health, education and support, the Trustee may in his absolute discretion pay to or apply for the benefit of my wife, such amounts from the principal and income of the trust estate, up to the whole thereof, as the Trustee may from time to time deem necessary or advisable for her use and benefit.

The 1986 wills provide that on the death of the surviving spouse, the trust shall cease and the trustee shall distribute the residue of the trust to the decedent's sons or their children.

Before he prepared the 1986 wills, Mr. Clark had become acquainted with the size and complexity of the decedent's business and financial holdings due to the fact that he had handled legal matters for the decedent and his businesses beginning in the mid-1970's. The decedent had also given Mr. Clark a personal financial statement dated April 30, 1986, listing assets of $13,530,671, liabilities

of $3,357,915, and a net worth of $10,172,756.  The financial statement detailed the investments that the Rapps owned in 1986.

The decedent and Mrs. Rapp executed their 1986 wills during a meeting in Mr. Clark's office.  Prior to that time, Mr. Clark had not consulted with Mrs. Rapp about the provisions of her 1986 will.  During the meeting, Mr. Clark read parts of the decedent's 1986 will to the decedent and Mrs. Rapp.  Mr. Clark told Mrs. Rapp that her 1986 will was essentially the same as the decedent's, and that she would not understand it because it was technical.  At the time the wills were signed, Mr. Clark did not discuss the estate tax consequences of the 1986 wills with either the decedent or Mrs. Rapp.

The 1986 wills were executed during a difficult time in the decedent's marriage to Mrs. Rapp.  During the mid-1980's, the decedent had considered divorcing his wife.  Mr. Clark advised the decedent that a divorce would be disruptive to the decedent's business ventures.  Mr. Clark put the decedent in contact with a marriage counselor in 1984.  The Rapps remained married until Mr. Rapp's death in 1988.

From time to time, the decedent discussed estate tax matters with his friends and acquaintances. On those occasions, he urged them to plan to avoid estate taxes. He did not disclose any specific provisions of his will or his wife's will, except to say that his sons would be co-trustees and that his wife, children, and grandchildren would not have to worry about the estate. The decedent stated that he trusted Mr. Richard Rapp to handle financial matters and to look after Mrs. Rapp in the event of his death. The decedent also told his friends that he caused his will to be updated to account for changes in the law, and he advised them to do the same. The decedent told Mr. Bruce Bell, an employee of Wells Fargo Bank who supervised the decedent's and MTSS's loan accounts with the bank, that there would be minimal estate taxes and minimal liquidity problems at the time of his death.

The decedent also discussed the estate tax marital deduction with his accountant, Mr. Lippert. Sometime between 1984 and 1986, the decedent showed Mr. Lippert an article about the marital deduction permitted for Federal estate tax purposes. The decedent told Mr. Lippert that he was "moving forward in that area." On other occasions, the decedent told Mr. Lippert that his estate tax matters were

"moving forward and * * * under control".  Mr. Lippert also
discussed with the decedent how to provide liquidity to pay
estate taxes on death.  After the decedent's death,
Mr. Lippert was surprised to learn that the testamentary
trust created under the decedent's 1986 will was not
eligible for the marital deduction.

The decedent's 1986 will was admitted to probate on
May 5, 1988, before the Superior Court of California,
County of Los Angeles (referred to herein as the probate
court).  Initially, the coexecutors, Messrs. David and
Richard Rapp, retained Mr. Clark to handle the probate of
the decedent's estate.  As the proceedings went on,
however, they became displeased with Mr. Clark's handling
of the estate.  They grew dissatisfied with the time it
took Mr. Clark to file required papers, and they felt
uncomfortable with some of the advice that he gave to them.
They also became aware that the decedent's 1986 will would
require the payment of substantial Federal estate taxes.
Mr. Richard Rapp felt that Mr. Clark was uncooperative and
was more concerned with avoiding a malpractice suit than
with settling the estate's problems.  Further, Mr. Richard
Rapp was unhappy because Mr. Clark threatened to withdraw
as counsel for MTSS in a litigation matter if he were

removed as counsel for the decedent's estate.  After the other matter was resolved, Mr. Richard Rapp caused the decedent's estate to retain different counsel.

On August 19, 1988, Mrs. Rapp filed with the probate court a document entitled Petition For Modification of Trust Created Under Article Fifth of Decedent's Will Admitted to Probate In Order to Carry Out Decedent's Intent.  Mrs. Rapp's petition alleges:

> it was decedent's intention that the Trust created under Article Fifth of his Will for the benefit of Petitioner [i.e., Mrs. Rapp] during her lifetime was intended to qualify for the QTIP election and that decedent believed that the Trustees would pay all of the income from the Trust, at least annually, to or for the benefit of Petitioner during her lifetime.

Based upon the decedent's intentions as alleged, Mrs. Rapp's petition asks the probate court to reform the decedent's will "to make it clear that the income from the Trust will be payable annually to Petitioner [i.e., Mrs. Rapp]" in order that the trust corpus will qualify as qualified terminable interest property as defined by section 2056(b)(7)(B).  The petition claims that the subject trust is a "marital deduction gift", as defined by section 21520(b) of the California Probate Code to be "a

transfer of property that is intended to qualify for the marital deduction."  Mrs. Rapp's petition relies upon section 15403 of the California Probate Code, which permits modification or termination of a trust upon consent of all beneficiaries, and section 15409(a) of the California Probate Code (West 1991), which permits modification or termination of  a trust to account for changed circumstances.

A hearing on Mrs. Rapp's petition was set for September 29, 1988, and Mrs. Rapp served a copy of her petition and a copy of the notice of hearing on the decedent's sons, both in their capacity as cotrustees and as beneficiaries, on Mr. David Rapp's two minor children, and on Mr. Clark.  On or about September 28, 1988, the probate court appointed Matthew S. Rae, Esquire, as guardian ad litem for the minor children of Mr. David Rapp, who were contingent remaindermen under the will, and for the unborn, unknown, and/or unascertained lawful issue of the decedent's two sons.

In advance of the hearing on Mrs. Rapp's petition, Mr. Richard Rapp made a survey of his father's friends and associates to determine the decedent's intent at the time his 1986 will was executed.  He also caused a search to be

made of the decedent's financial records and files.
Mr. Richard Rapp believed that Mr. Clark would not make a credible witness, and Mr. Rapp concluded that he could not defeat his mother's petition for reformation of the decedent's will.

The hearing on Mrs. Rapp's petition took place on September 29, 1988.  The Commissioner of Internal Revenue was not notified of the proceeding and did not enter an appearance.  Mr. Clark was notified of the hearing, but he did not voluntarily appear at the hearing.  The probate court granted Mrs. Rapp's petition on October 31, 1988, and the Court's order became final on April 30, 1989.

The order of the probate court dated October 31, 1988, reads as follows:

> The Petition for Modification of Trust Created Under Article Fifth of Decedent's Will Admitted to Probate in Order to Carry Out Decedent's Intent, came on the 29th day of September, 1988 in Department 11 at 9:15 a.m. for hearing and settlement by the above-entitled Court, the Honorable Richard C. Hubbell, Judge presiding, with Clark R. Byam of HAHN & HAHN, appearing on behalf of Laura B. Rapp; Gerald E. Lunn, Jr., appearing on behalf of Richard L. Rapp and David L. Rapp, Co-Executors of the Will of Bert Rapp, deceased and Matthew S. Rae, Jr., Guardian ad Litem appearing on behalf of any and all minor and unborn, unknown, and/or unascertained grandchildren of decedent.

Oral argument was presented by all parties present and all parties then submitted the matter for the Court's determination.

Based upon the written pleadings and oral argument, the Court finds as follows:

(1) All notices of the hearing have been given as required by law.

The Court Orders:

(1) That Article FIFTH (b) of decedent's Will is modified as follows:

"(b) During the lifetime of my wife, LAURA B. RAPP, the Trustee or co-Trustees shall pay the net income from the corpus of the trust annually or at more frequent intervals to or for the benefit of LAURA B. RAPP, during her lifetime. In addition to the net income, the Trustee or co-Trustees shall pay as much of the principal from the Trust to or for the benefit of my wife as shall be needed to provide for the reasonable health, education and support of my wife during her lifetime. Any income accrued or held undistributed at the time of my wife's death shall be distributed to her estate."

(2) that the following is added as Subsection (i) to Article FIFTH:

"(i) I authorize my executor to elect to treat the trust created under this Article FIFTH, or any portion there-

> of, as "qualified terminable
> interest property" in order
> to obtain the marital deduc-
> tion for such property for
> federal estate tax purposes.
> Whether or not my executors
> make such an election, I
> hereby exonerate my executors
> from any liability resulting
> from making or failing to
> make such an election."

The order was signed by the probate court judge and was also signed "Approved as to form" by the guardian ad litem, Mr. Rae, and the attorney for the estate, Mr. Lunn.

On or about November 9, 1988, shortly before the due date for the petitioner's estate tax return, petitioner's attorney filed with the Internal Revenue Service an Application for Extension of Time to File U.S. Estate (and Generation-Skipping Transfer) Tax Return and/or Pay Estate (and Generation-Skipping Transfer) Tax(es) on Form 4768.  Petitioner requested an extension of time to file until May 23, 1989, for the following reasons:

> The Decedent's estate includes numerous
> interrelated closely-held businesses, some
> of which have experienced serious financial
> problems.  Significant questions of valuation
> remain unresolved despite diligent efforts
> to resolve them.  Furthermore, a number of
> significant, unresolved contingent creditors'
> claims remain outstanding against the estate.
> The executor intends to make an election under

Section 2057 [sic] (b)(7)(B)(v), but cannot, at this time, determine which portion of the estate is to be treated as "qualified terminable interest property."

Along with the application for an extension of time to file, petitioner's attorney sent a payment of estate tax in the amount of $156,424 and requested an extension of time to pay any additional amount of estate tax for the following reason:

The amount of estate taxes can not [sic] be determined because the size of the gross estate is unascertainable (for the reasons set forth above under "Extension of Time to File"), and the executor's election to treat property passing to the surviving spouse as qualified terminable interest property cannot be made. Nevertheless, a payment of $156,424 against the amount of estate taxes estimated to be due is paid with this application.

Petitioner's attorney did not explain how the estate tax payment of $156,424 was computed.

On May 22, 1989, the executor filed the petitioner's United States Estate (and Generation-Skipping Transfer) Tax Return on IRS Form 706. According to the return, the decedent and Mrs. Rapp owned community property worth $11,255,444.12 at the time of the decedent's death. The return reports that the decedent's total gross estate,

consisting of one-half the community property in the

aggregate amount of $5,627,722.06, is composed of the

following assets:

| | |
|---|---|
| Real estate, Sch. A | $1,041,375.00 |
| Stocks and bonds, Sch. B | 2,374,002.67 |
| Mortgages, notes, and cash, Sch. C | 1,537,013.93 |
| Insurance on decedent's life, Sch. D | 25,000.00 |
| Jointly owned property, Sch. E | 105,576.96 |
| Other miscellaneous property, Sch. F | |
|   Partnerships | 292,500.00 |
|   Leasehold on bldg. and lot | 115,000.00 |
|   Option agreement | 20,000.00 |
|   Overpayment of Federal income tax | 1,991.00 |
|   Jewelry and furs | 100,262.50 |
|   Household furnishings | 15,000.00 |
|     Total | 5,627,722.06 |

A Schedule M--Bequests, Etc. to Surviving Spouse,

was filed with the petitioner's estate tax return.  The

executor answered "no" to question 1 on Schedule M.  That

question asks:

> Did any property pass to the surviving spouse as
> a result of a qualified disclaimer?  If "Yes",
> attach a copy of the written disclaimer required
> by section 2518(b).

No written disclaimer was attached to the petitioner's

estate tax return.

In response to question 2 on Schedule M, the executor

checked the space provided to "elect to claim a marital

deduction for qualified terminable interest property (QTIP)

under section 2056(b)(7)."  Schedule M states that the

executor intended to claim the marital deduction only with

respect to so much of the residue of the decedent's estate

as reduces the total estate tax payable to $156,424.  The

following statement is set forth on part 2 of Schedule M:

> A fraction of each of the above assets allocated
> to the testamentary QTIP trust established under
> Article FIFTH of decedent's last Will dated
> July 9, 1986, as construed by Court Order
> Modifying Decedent's Trust dated October 31, 1988
> shall be subject to the QTIP election hereunder.
> The numerator of such fraction shall be the
> minimum amount of federal estate tax marital
> deduction under Section 2056(b)(7) necessary to
> reduce the Federal Estate Tax to $156,424 (based
> on the values as finally determined for federal
> estate tax purposes of all assets includible in
> the decedent's taxable estate) and the denomina-
> tor shall be the final federal estate tax value
> of the property passing to the trust established
> under Article FIFTH of the decedent's will, as
> modified by the order modifying decedent's trust
> dated October 31, 1988, after taking into account
> all liabilities of the estate.  * * *  The fore-
> going provisions shall be interpreted based on
> the Executor's intent that the elective property
> will reflect its proportionate share of any
> increase or decline in value in the whole of the
> property listed above or any subsequently
> discovered property allocable to such trust and
> that the total federal estate tax payable
> hereunder shall not exceed $156,424.

The record of this case does not explain why the executor

intended to pay estate taxes of $156,424.

On Part 1 of Schedule M, which calls for a list of "Property Interests Which Are Not Subject to a QTIP Election", the executor reported the property specifically devised to Mrs. Rapp, consisting of the couple's residence, the household furnishings, and the decedent's personal effects, in the aggregate amount of $435,262.50.  On part 2 of Schedule M, which calls for a list of "Property Interests Which Are Subject to a QTIP Election", the executor reported $3,444,087.28.  That amount is composed of the value of the assets available for distribution to the testamentary trust, $5,086,882.60 (i.e., total gross estate, $5,627,722.06, less assets devised to Mrs. Rapp, $435,262.50, and assets jointly owned with other individuals, $105,576.96), less the portion of the property that was not subject to the QTIP election, $802,510.21, and the aggregate nonmarital deductions claimed on the return, $840,285.11.  The marital deduction claimed on the return is $3,683,899.38.  It consists of the total interests passing to Mrs. Rapp, $3,879,349.78 (i.e., $3,444,087.28 plus $435,262.50) less Federal estate taxes, $156,424, and other death taxes, $39,026.40.

In the notice of deficiency issued to petitioner, respondent determined that petitioner had "failed to fully

substantiate" the marital deduction. Respondent allowed the deduction to the extent of the property that had been specifically devised to Mrs. Rapp, $435,262.50, but disallowed the deduction to the extent of the property that had been distributed to the testamentary trust.

OPINION

For purposes of computing Federal estate taxes, section 2056(a) permits an allowance of marital deduction to be deducted from the gross estate. Sec. 2056(a). In general, the allowance of marital deduction consists of the value of any interest in property which passes or has passed from the decedent to his or her surviving spouse. Id. However, as a general rule, the marital deduction does not include the value of any property in which the decedent's spouse is given a life estate or other terminable interest and in which another person is given an interest that may permit the other person to possess or enjoy any part of the property after the interest of the surviving spouse terminates or fails. Sec. 2056(b)(1).

An exception to the limitation applicable to life estates or other terminable interests is provided by section 2056(b)(7) in the case of "qualified terminable

interest property".  Under section 2056(b)(7)(A),
"qualified terminable interest property", herein referred
to as QTIP, is treated as passing only to the surviving
spouse, and no part of the property is treated as passing
to any person other than the surviving spouse.  Section
2056(b)(7)(B)(i) defines QTIP as follows:

> (i) In general.--The term "qualified terminable interest property" means property--
>
>> (I) which passes from the decedent,
>>
>> (II) in which the surviving spouse has a qualifying income interest for life, and
>>
>> (III) to which an election under this paragraph applies.

A "qualifying income interest for life" is defined by
section 2056(b)(7)(B)(ii) as follows:

> (ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--
>
>> (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and
>>
>> (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

After concessions by the parties, the sole issue for decision in this case is whether the property distributed to the testamentary trust established under the decedent's will is QTIP, as defined by section 2056(b)(7)(B)(i), with the result that the value of that property is eligible to be included in the allowance of marital deduction provided by section 2056(a).  Petitioner bears the burden of proving eligibility for the deduction.  Rule 142(a), Tax Court Rules of Practice and Procedure.  All Rule references in this opinion are to the Tax Court Rules of Practice and Procedure.

As originally written, Article Fifth of the decedent's 1986 will provides that the residue of the decedent's property, after the payment of certain debts and expenses, is to be placed in trust for the benefit of the decedent's surviving spouse, and, upon her death, to be divided equally between the decedent's two sons.  The will does not give Mrs. Rapp the right to receive income from the trust. It provides that she is entitled to receive distributions of income and principal from the trust if the cotrustees make the determination in their "absolute discretion" that she is in need of funds "for her proper health, education and support."  Thus, under the decedent's 1986 will,

Mrs. Rapp is not entitled to receive "all the income from the property, payable annually or at more frequent intervals", as required by section 2056(b)(7)(B)(ii)(I). Accordingly, as the decedent's 1986 will was originally written, the property which formed the corpus of the testamentary trust is not QTIP and is not eligible to be included in the marital deduction. Sec. 2056(b)(1).

The decedent's 1986 will was reformed by the order of the probate court issued on October 31, 1988, quoted above. As reformed, Article Fifth (b) of the decedent's will directs the trustees to "pay the net income from the corpus of the trust annually or at more frequent intervals to or for the benefit of LAURA B. RAPP, during her lifetime." The reformed will also expressly authorizes the executor to elect to treat the property held in the trust as QTIP.

Petitioner argues that the corpus of the trust can be included in the marital deduction for four reasons. First, petitioner argues that on the date of the decedent's death Mrs. Rapp had an enforceable right under California law to obtain reformation of the decedent's 1986 will as approved by the order of the probate court and that the order of the probate court should be respected for Federal estate tax purposes. Second, petitioner argues that the QTIP rules

are applied as of the date of the QTIP election, not the date of the decedent's death.  Third, petitioner argues that as of the date of the decedent's death, Mrs. Rapp was entitled to receive annual distributions of all of the income from the trust because the actions of the co-trustees and the guardian ad litem in consenting to the reformation constituted a "qualified disclaimer" under section 2518.  Fourth, petitioner argues that, as of the date of decedent's death, Mrs. Rapp was entitled to receive annual distributions of all of the income from the trust because the cotrustees were obligated to make such distributions to Mrs. Rapp under a fiduciary duty to look after her best interests.

Enforceable Right Under California Law to All Trust Income

As a general rule, State law determines the property rights and interests created by a decedent's will, but Federal law determines the tax consequences of those rights and interests.  E.g., De Oliveira v. United States, 767 F.2d 1344, 1347 (9th Cir. 1985).  In this case, petitioner's eligibility to include the value of the trust property in the marital deduction, for Federal estate tax purposes, depends upon the nature of the interest that Mrs. Rapp received in the trust under the decedent's 1986

will.  The nature of Mrs. Rapp's interest in the trust is a matter of California State law.  See, e.g., <u>Estate of Heim v. Commissioner</u>, 914 F.2d 1322, 1327 (9th Cir. 1990), affg. T.C. Memo. 1988-433.

Petitioner argues that the order of the probate court reforming the decedent's will should be respected for Federal estate tax purposes.  However, the law is clear, and both parties to this case agree, that we are not bound by the action of a State trial court, such as the order of the probate court, that has not been affirmed by the State's highest court.  <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456 (1967); <u>Ahmanson Found. v. United States</u>, 674 F.2d 761, 773-775 (9th Cir. 1981); see <u>Estate of Nicholson v. Commissioner</u>, 94 T.C. 666, 673-674, 680 (1990).  If the action of the probate court is to be respected for Federal estate tax purposes, it must be in conformity with California law, and in the absence of a determination by the California Supreme Court, we are charged with the responsibility of making that determination.  <u>Commissioner v. Estate of Bosch</u>, <u>supra</u> at 465.  Thus, we must decide whether Mrs. Rapp had an enforceable right under California law to obtain annual distributions of all of the income

from the trust for life, as required by the order of the probate court.  See id.

Petitioner begins by arguing that the order of the probate court must be presumed to be "a bona fide recognition of enforceable rights" under California law and that respondent has failed to rebut that presumption. In support of that argument, petitioner cites section 20.2056(e)-2(d)(2), Estate Tax Regs. (currently sec. 20.2056(c)-2(d)(2), Estate Tax Regs.), which provides as follows:

> If as a result of the controversy involving the decedent's will, or involving any bequest or devise thereunder, a property interest is assigned or surrendered to the surviving spouse, the interest so acquired will be regarded as having "passed from the decedent to his surviving spouse" only if the assignment or surrender was a bona fide recognition of enforceable rights of the surviving spouse in the decedent's estate. Such a bona fide recognition will be presumed where the assignment or surrender was pursuant to a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest.  However, such a decree will be accepted only to the extent that the court passed upon the facts upon which deductibility of the property interest depends.  If the assignment or surrender was pursuant to a decree rendered by consent, or pursuant to an agreement not to contest the will or not to probate the will, it will not necessarily be accepted as a bona fide evaluation of the rights of the spouse.

We are not convinced that there was a "genuine and active contest" in the probate court or that the order of the probate court constitutes "a decision of a local court upon the merits in an adversary proceeding", so as to trigger the presumption set forth in the above regulation. Sec. 20.2056(e)-2(d)(2), Estate Tax Regs.  In this connection, it is significant that the guardian ad litem stated during the hearing before the probate court that a "benefit" would be realized by the entire Rapp family if the estate tax of approximately $2 million were postponed until Mrs. Rapp's death.  He stated as follows:

> Under those circumstances the benefit to the entire family, the entire estate, by post- poning the tax until the surviving spouse dies, I believe is also a benefit on the person I have been appointed to represent.

We do not accept petitioner's assertion that the investigation conducted by the executor proves that the proceeding before the probate court was adversarial in nature.  To the contrary, it is equally likely that the executor's investigation was undertaken to justify petitioner's position before this Court in order to obtain the "benefit" of postponing the estate tax.

In any event, we do not accept petitioner's assertion that the order of the California probate court is "a decision of a local court upon the merits in an adversary proceeding following a genuine and active contest." Sec. 20.2056(e)-2(d)(2), Estate Tax Regs. To the contrary, the record of the hearing before the probate court shows that the court granted Mrs. Rapp's petition after ascertaining the opinion of the guardian ad litem that his clients "will not be adversely affected by this petition" and determining that no objection had been filed to the petition. No witnesses were called to testify, and no documents were introduced into evidence. We find nothing in the record of this case to show that the probate court "passed upon the facts upon which deductibility of the property interests depends." Sec. 20.2056(e)-2(d)(2), Estate Tax Regs. Rather, the order of the probate court appears to have been "rendered by consent" such that it "will not necessarily be accepted as a bona fide evaluation of the rights of the spouse." Sec. 20.2056(e)-2(d)(2), Estate Tax Regs. Thus, we reject petitioner's assertion that the order of the probate court must be presumed to be a bona fide recognition of Mrs. Rapp's enforceable rights under California law. We proceed to review California law

to determine whether Mrs. Rapp was entitled under the decedent's will to receive annual distributions of all of the income from the testamentary trust.

Under California law, the nature of the interest given by a testator to his or her surviving spouse is determined in accordance with the testator's intent, as determined by a construction of the language used in the will.  E.g., Gill v. Stone (In re Estate of Dodge), 491 P.2d 385 (Cal. 1971); Hembree v. Quinn (In re Estate of Russell), 444 P.2d 353 (Cal. 1968); Kime v. Barnard (Estate of Kime), 193 Cal. Rptr. 718 (Cal. Ct. App. 1983); Talbot v. Bachelor (Estate of Casey), 198 Cal. Rptr. 170 (Cal. Ct. App. 1982); Cullinan v. Dunne (Estate of Lindner), 149 Cal. Rptr. 331 (Cal. Ct. App. 1978).  Evidence concerning the circumstances surrounding the testator's execution of the will, so-called extrinsic evidence, is generally admissible "to determine whether a seemingly clear instrument or term is actually ambiguous."  Hoover v. Hartman, 186 Cal. Rptr. 669, 673 (Cal. Ct. App. 1982); see also Saleen v. Aulman (In re Estate of Taff), 133 Cal. Rptr. 737, 740-741 (Cal. Ct. App. 1976).  If extrinsic evidence renders the language of the will susceptible of two or more meanings, then the extrinsic evidence can be used to resolve the ambiguity.

Hembree v. Quinn, supra at 361. However, if the extrinsic evidence does not render the will ambiguous, the extrinsic evidence is disregarded and the plain language of the will is relied upon to determine the testator's intent. Estate of Heim v. Commissioner, 914 F.2d at 1325.

Irrespective of whether extrinsic evidence is considered, the objective of the courts in California is to determine the testator's intent from the language used and not to write a new will for the testator. In Talbot v. Batchelor, supra at 172 the court stated as follows:

> Further, whether or not resort is had to extrinsic evidence, the court must determine the intent of the testator from the language used. The court in interpreting the will may not decide what the testator should have done or even that the testator desired to accomplish a particular objective. The court determines only what the testator did do by the manner in which he expressed himself. * * * In short, the court, under the guides of interpretation, may not write a new will for the testator.

We note that the California Probate Code provides special rules for a "marital deduction gift", defined as "a transfer of property that is intended to qualify for the marital deduction." Cal. Probate Code sec. 21520(b) (West 1991). For this purpose, the "marital deduction" is defined as "the federal estate tax deduction allowed for

transfers under Section 2056 of the Internal Revenue Code". Cal. Probate Code sec. 21520(a) (West 1991).  If an instrument contains  a marital deduction gift, the California Probate Code provides a liberal construction to allow a marital deduction, as follows:

> (a) The provisions of the instrument, including any power, duty, or discretionary authority given to a fiduciary, shall be construed to comply with the marital deduction provisions of the Internal Revenue Code.
>
> (b) The fiduciary shall not take any action or have any power that impairs the deduction as applied to the marital deduction gift.  [Cal. Probate Code sec. 21522(a) and (b) (West 1991).]

These special rules do not apply unless there is sufficient evidence to find that the decedent intended the gift to qualify for the marital deduction.  See Estate of Heim v. Commissioner, supra at 1329.

In this case, as mentioned above, the language of the decedent's 1986 will gives Mrs. Rapp an interest in only so much of the income from the trust as is paid "for her proper health, education and support" in the absolute discretion of the cotrustees.  This language is clear and unambiguous and cannot be construed to give Mrs. Rapp the

right "to all the income from the property, payable annually or at more frequent intervals", as required by the definition of qualifying income interest for life, set forth in section 2056(b)(7)(B)(ii)(I).  Further, there is no mention of the marital deduction in the decedent's will nor any evidence from the language of the will that the decedent intended the trust property to qualify for the marital deduction.

Notwithstanding the seemingly unambiguous language used in the decedent's will, the Court allowed petitioner to introduce extrinsic evidence of the facts and circumstances surrounding the execution of the decedent's 1986 will, over respondent's objection.  As discussed above, the introduction of such evidence is permissible under California law.  E.g., Hembree v. Quinn, supra at 361-362; Hoover v. Hartman, supra at 673.

Petitioner introduced the testimony of seven witnesses into evidence and, based thereon, claims to have presented substantial direct and indirect evidence "that the Decedent intended that the residue of his estate qualify for the marital deduction."  As direct evidence of such intent, petitioner cites the testimony of three witnesses and argues in its post-trial brief that the decedent told his

accountant, Mr. Lippert, "that he was changing his estate plan to take advantage of the unlimited marital deduction" and led Mr. Lippert "to believe that * * * [the decedent] had instructed Attorney Clark to change his Will so that it would qualify for the unlimited marital deduction." Petitioner also argues that the decedent told Mrs. Rapp that "when he died everything would be hers" and that the decedent told his niece, Mrs. Josephson, that "whatever he earned in his lifetime was going to be his wife's, and ultimately his sons[']."

As "indirect evidence" that the decedent intended the residue of his estate to qualify for the marital deduction, petitioner argues in its post-trial brief that the decedent told his wife, his son, and his banker, Mr. Bruce Bell, "that his estate plan had been drafted to avoid or defer taxes, and that there would be minimal taxes due upon his death." Petitioner also cites as indirect evidence the decedent's statements made to Mrs. Josephson, his investment adviser, Mr. Parneet Kongkeo, and his friend, Mr. John Pabigian, about "the importance of estate planning and deferring taxes." Petitioner further cites the fact that the decedent had shown "an article to his CPA discussing the marital deduction and the changes in the

estate tax laws."  According to petitioner, the statements made by the decedent to those individuals "are simply not reconcilable with the Will as drafted" and "Under California law the Will is therefore ambiguous".

Even assuming that we accept petitioner's characterization of the testimony of its seven witnesses, we do not agree that any of the testimony proves either that the decedent intended the corpus of the testamentary trust to qualify for the marital deduction, or that any of the language used in the decedent's 1986 will is ambiguous. The testimony of petitioner's witnesses consists of general statements made by the decedent to his family, friends, and business associates about estate planning and death taxes. None of petitioner's witnesses, other than Mrs. Rapp, ever saw the decedent's 1986 will, and in no case did the decedent discuss specific provisions of his will with any of them.  None of the decedent's statements specifically refers to his 1986 will, let alone uncovers an ambiguity in the language used in the will.

The picture that emerges from the testimony of petitioner's witnesses is that the decedent was a successful businessman who was knowledgeable about the Federal income tax consequences of his leasing business,

who usually sought to minimize taxes, who wanted to provide for Mrs. Rapp and his sons, and who attempted to educate himself about estate planning and death taxes by reading articles and discussing those matters with various friends and business associates.  Prior to the time the decedent executed his 1986 will, the record shows that the decedent was aware of the QTIP provisions of the marital deduction. This is shown by the fact that he had discussed an article on that subject with his accountant, Mr. Lippert, during 1984, 1985, or 1986.  We can even infer from the testimony of petitioner's witnesses that the decedent considered using a so-called QTIP trust in his will.  However, there is no evidence that the decedent actually did so.  The language of Article Fifth (b) of his 1986 will does not give Mrs. Rapp the right to receive the annual income from the trust.  Rather, Article Fifth (b) gives Mrs. Rapp only so much of the income from the trust as the cotrustees in their "absolute discretion" deem necessary "for her proper health, education and support".  The decedent's 1986 will does not use the term "marital deduction", "QTIP", or the like,  or otherwise give any indication that the decedent intended the corpus of the testamentary trust to be eligible for the marital deduction.  Nor is there any

extrinsic evidence that uncovers an ambiguity, in the sense of a double meaning, in the language used in the decedent's 1986 will from which we could infer that the decedent intended the trust to be eligible for the marital deduction. We simply have no basis to conclude from the record of this case that the decedent intended Mrs. Rapp to be "entitled to all the income from the property, payable annually or at more frequent intervals" as required by section 2056(b)(7)(B) (ii)(I). See Estate of Heim v. Commissioner, 914 F.2d at 1330.

QTIP Rules Must Be Applied as of the Date of the Election

Petitioner's second argument is that the date for determining whether property or an interest in property passing to the surviving spouse qualifies as QTIP is the date of the QTIP election and not the date of the decedent's death. According to petitioner, the trust property in this case qualifies as QTIP because on the date the QTIP election was made, Mrs. Rapp was entitled to all of the income from the trust. In support of that argument, petitioner cites recent opinions issued by the U.S. Courts of Appeals for the Sixth, Eighth, and Fifth Circuits in Estate of Spencer v. Commissioner, 43 F.3d 226 (6th Cir.

1995), revg. T.C. Memo. 1992-579; Estate of Robertson v. Commissioner, 15 F.3d 779 (8th Cir. 1994), revg. 98 T.C. 678 (1992); and Estate of Clayton v. Commissioner, 976 F.2d 1486 (5th Cir. 1992), revg. 97 T.C. 327 (1991).

The facts of each of the cases relied upon by petitioner, Estate of Spencer, Estate of Robertson, and Estate of Clayton, are similar. The estate plan of the decedent in each of those cases included one or more trusts in which the surviving spouse was given a qualifying income interest for life, as defined by section 2056(b)(7)(B)(ii)(I), and at least one other trust in which the surviving spouse was not given a qualifying income interest for life. The decedent in each of the cases had clearly articulated his intention that some or all of the residue of his estate would pass to the "QTIP trust". The controversy arose because each decedent had also given his personal representative the discretion to determine what portion, if any, of the residue of his estate should pass to the "QTIP trust", and what portion should pass to the non-QTIP trust. The Commissioner argued that the personal representative's discretion to direct property away from the "QTIP trust" constituted an impermissible power to appoint property away from the surviving spouse, contrary

to section 2056(b)(7)(B)(ii)(II), and precluded the property from meeting the requirement, imposed by section 2056(b)(7)(B)(i)(I), that it be property "which passes from the decedent".

In each of the three cases, the Court of Appeals rejected the Commissioner's reading of section 2056(b)(7) as contrary to the statute. Estate of Spencer v. Commissioner, supra at 230-231; Estate of Robertson v. Commissioner, supra at 783-784; Estate of Clayton v. Commissioner, supra at 1497. All of the courts noted that the election is one of the elements of the definition of QTIP, sec. 2056(b)(7)(B)(i)(III), and at least one of those courts reasoned that the statute requires the validity of the QTIP election to be determined as of the time the election is made, rather than as of the date of the decedent's death, Estate of Spencer v. Commissioner, supra at 231; Estate of Robertson v. Commissioner, supra at 783-784; Estate of Clayton v. Commissioner, supra at 1498.

In each of the cases, when the court tested the validity of the election, it found that the property in the "QTIP trust" met the definition of QTIP because, in accordance with the decedent's expressed interest, the surviving spouse was entitled to all of the income from the

property for life, payable annually or at more frequent intervals, and no person had a power to appoint any part of the property to any person other than the surviving spouse. Thus, in each case the court held that the surviving spouse had a qualifying interest for life in the property held by the "QTIP trust", as required by section 2056(b)(7)(B)(i)(II), and that the decedent's estate was entitled to include the value of the property held by the "QTIP trust" in the marital deduction.

The tacit premise of petitioner's second argument is that we should test the validity of the QTIP election based upon the interest that Mrs. Rapp received under the order of the probate court reforming the decedent's 1986 will. However, as discussed above, we are not bound by the order of the probate court in determining what interest in the trust passed from the decedent to Mrs. Rapp under California law. Commissioner v. Estate of Bosch, 387 U.S. at 465. In fact, as discussed in the prior section of this opinion, we found that the order of the probate court was not in accordance with the decedent's intent as determined from the language used in the decedent's 1986 will and, thus, was not in accordance with California law. Accordingly, we found that Mrs. Rapp's interest in the

trust was the interest described by the decedent's 1986 will, as originally drafted. Under the decedent's 1986 will, Mrs. Rapp did not have the right to any income from the trust property. She was entitled to receive income from the trust only if the cotrustees determined in their "absolute discretion" that she needed funds "for her proper health, education and support."

In this case, therefore, it does not matter when the validity of the QTIP election is tested, as of the date of the decedent's death or as of the date of the election. At no time did Mrs. Rapp have a qualifying income interest for life in the trust, as defined by section 2056(b)(7)(B)(ii), which passed from the decedent, as required by section 2056(b)(7)(B)(i)(I), and at no time did the trust property in this case qualify as QTIP.

### The Order of the Probate Court Is a "Qualified Disclaimer" Under Section 2518(b)

Petitioner's third argument is that the order of the probate court is, in effect, a "qualified disclaimer" as defined by section 2518(b). Petitioner argues that the trustees and the guardian ad litem "consented" to the probate court's order reforming the decedent's will and, in effect, disclaimed "the right and/or power of the Trustees

to accumulate income of the marital trust during Laura's lifetime." Petitioner takes this position in the alternative to its position, discussed above, that the order of the probate court was "a decision of a local court upon the merits in an adversary proceeding". According to petitioner, "the effect of such a qualified disclaimer is that the income interest must be deemed to have passed from the Decedent to Laura [i.e., Mrs. Rapp]."

Respondent argues that the Court should not consider this issue, viz, whether the probate court's order meets the requirements of a qualified disclaimer under State or Federal law, because it was raised for the first time in petitioner's post-trial brief. As a result, respondent complains, the Government was deprived of an opportunity to introduce evidence at trial that would have had a bearing on the issue. In this regard, respondent notes that one of the cotrustees, Mr. David Rapp, and the guardian ad litem, Mr. Rae, were not called to testify at trial, and respondent did not examine the other cotrustee, Mr. Richard Rapp, about this issue. Respondent also raises a number of substantive issues about whether the probate court's order constitutes a qualified disclaimer under either Federal or California State law. Finally, respondent argues in the

alternative that, even if the order of the probate court does constitute a qualified disclaimer, Mrs. Rapp did not thereby receive a qualifying income interest for life as required by section 2056(b)(7)(B)(i)(II).

In general, if a person makes a qualified disclaimer with respect to an interest in property, then the Federal estate, gift, and generation-skipping transfer tax provisions apply "as if the interest had never been transferred to such person."  Sec. 2518(a); see sec. 25.2518-1(b), Gift Tax Regs.  The interest is treated as passing directly from the transferor of the property to the person entitled to receive it as a result of the disclaimer.  Sec. 25-2518-1(b), Gift Tax Regs.  If property is treated as passing from the decedent to his or her surviving spouse as a result of a qualified disclaimer, then the value of the property can be included in the marital deduction.  See DePaoli v. Commissioner, 62 F.3d 1259 (10th Cir. 1995), revg. T.C. Memo. 1993-577; sec. 20.2056(d)-1(b), Estate Tax Regs.

Petitioner raised its contention that the probate court order constituted a qualified disclaimer under section 2518 for the first time in its post-trial brief. In deciding whether to permit a party to raise a new issue

on brief, we must determine whether considerations of surprise and prejudice require the Court to protect the opposing party from having to face a belated issue at a time when the opportunity to present pertinent evidence is limited.  Ware v. Commissioner, 92 T.C. 1267, 1268 (1989), affd. 906 F.2d 62 (2d Cir. 1990).  In cases where the opposing party is surprised by the issue, in the sense that the proponent did not give "fair warning" of his intent to raise it, and is prejudiced by being foreclosed from introducing evidence that would have a bearing on the new issue, we have declined to consider the new issue.  See, e.g., Sundstrand Corp. v. Commissioner, 96 T.C. 226, 346-348 (1991).  On the other hand, we have permitted a party to raise a new issue on brief where we have found that there would be no prejudice to the opposing party.  See, e.g., Ware v. Commissioner, supra at 1268-1269; Pagel, Inc. v. Commissioner, 91 T.C. 200, 210-213 (1988), affd. 905 F.2d 1190 (8th Cir. 1990).

In this case, respondent received no warning, prior to petitioner's post-trial brief, that petitioner intended to contend that the probate court's order constituted a qualified disclaimer under section 2518.  Also, at the time this issue was raised, respondent was foreclosed from

examining the cotrustees and the guardian ad litem about the various factual elements of the definition of qualified disclaimer under section 2518(b) and section 278 of the California Probate Code. Therefore, respondent would be prejudiced if we were to consider this issue.

Moreover, even if we were to agree to consider this issue, we would have to find, on the basis of the record made at trial, that petitioner did not meet its burden of proving that the probate court's order constituted a qualified disclaimer. See Rule 142. As quoted above, a qualified disclaimer is "an irrevocable and unqualified refusal by a person to accept an interest in property". Sec. 2518(b). Petitioner argues in its post-trial brief that "The interest disclaimed was the right and/or power of the Trustees to accumulate income of the marital trust during Laura's lifetime." However, there is nothing in the record of this case to prove that the trustees disclaimed anything. The order of the probate court on which petitioner relies is the action of the probate court and not the action of any of the parties to that proceeding. See Harris v. Commissioner, 340 U.S. 106, 110 (1950). Neither of the trustees in this case, Mr. Richard Rapp or his brother, testified that either of them made a qualified

disclaimer of anything.  In fact, to the contrary, on Schedule M of the decedent's estate tax return, one of the trustees, Mr. Richard Rapp, acting in his capacity as executor, answered "no" to question No. 1:  "Did any property pass to the surviving spouse as a result of a qualified disclaimer?"  Mr. Richard Rapp also failed to attach to the petitioner's estate tax return a written disclaimer as required by question No. 1.  Finally, there is no testimony or other evidence to show what interest in property was being disclaimed, as required both by section 25.2518-2(b)(1), Gift Tax Regs. and by California Probate Code section 278(b), or that the requisite interest passed to the surviving spouse by operation of law without any direction on the part of the persons purporting to make the disclaimer.  See DePaoli v. Commissioner, supra; Estate of Bennett v. Commissioner, 100 T.C. 42, 67, 72-73 (1993).

Fiduciary Duty Compels Trustees To Pay All Trust Income
to Mrs. Rapp

Petitioner's final argument is that this case is governed by the opinion of the Court of Appeals for the Ninth Circuit in Estate of Ellingson v. Commissioner, 964 F.2d 959 (9th Cir. 1992), revg. 96 T.C. 760 (1991). According to petitioner, "Under the Ellingson case, the

marital deduction should be allowed, because the Trustees had a fiduciary duty to * * * [Mrs. Rapp] to comply with the QTIP rules."  Petitioner's post-trial brief further states as follows:

> Petitioner submits that the Trustees were under a fiduciary duty to commit to pay all of the income to Laura [i.e., Mrs. Rapp], both because of her need to receive such income and because it would be detrimental to her legitimate interests under the Will to pay a large estate tax at the Decedent's death.

The thrust of petitioner's argument is that the trustees are bound to pay all of the income of the trust to Mrs. Rapp because otherwise the trust would not qualify for the marital deduction and the estate would be liable for estate taxes of more than $2 million, and that would be contrary to Mrs. Rapp's best interests.  Petitioner argues that Mrs. Rapp, thus, had a "qualifying income interest for life" in the trust, as required by section 2056(b)(7)(B)(ii), and the trust property qualifies as QTIP.

In support of this argument, petitioner cites section 16081(a) of the California Probate Code, under which trustees are directed to "act in accordance with fiduciary principles and * * * not act in bad faith" even if a trust instrument confers absolute, sole, or uncontrolled

discretion on the trustee.  Petitioner also cites section 16040(a) of the California Probate Code, which requires a trustee to administer the trust:

> with the care, skill, prudence, and diligence
> under the circumstances then prevailing that a
> prudent person acting in a like capacity and
> familiar with such matters would use in the
> conduct of an enterprise of like character and
> with like aims to accomplish purposes of the
> trust as determined from the trust instrument.

Petitioner's argument is based upon a misreading of the Estate of Ellingson case.  In that case, the settlor's estate plan provided for the creation of a "Marital Deduction Trust" upon his death under which his surviving spouse received the "entire net income" of the trust for her life.  However, the trust agreement contained a proviso under which the trustees, one of whom was the surviving spouse, were authorized to accumulate income in excess of "the amount which the Trustee deems to be necessary for * * * [the surviving spouse's] needs, best interests and welfare".  Estate of Ellingson v. Commissioner, supra at 960.

The Court of Appeals found, on the basis of a fully stipulated record, that the settlor intended the trust property to constitute QTIP and to qualify for the marital

deduction.  Id. at 963-964.  Notwithstanding the decedent's expressed intent that the trust qualify for the marital deduction, the "accumulation proviso" seemed to mean that the surviving spouse was not entitled to all of the income from the trust and, therefore, the surviving spouse did not have a "qualifying income interest for life" as defined by section 2056(b)(7)(B)(ii).  Thus, there was a conflict between the provisions of the trust agreement under which the surviving spouse was to receive the "entire net income" of the trust and the accumulation proviso under which the trustee was authorized to accumulate income deemed to be in excess of the amount necessary for the surviving spouse's "best interests".

In the Ellingson case, the Court of Appeals resolved the ambiguity in the trust agreement by interpreting the language used in the accumulation proviso in accordance with the "the settlor's clearly manifested intent" that the marital deduction property qualify for the QTIP deduction.  Id. at 965.  The Court of Appeals concluded that because the trustees had chosen to make the QTIP election, the "best interests" of the surviving spouse, as that phrase was used in the accumulation proviso, required the trustees to pay all of the income of the trust to the surviving

spouse during her lifetime. Otherwise, they would be forced to sell the family farm in order to pay estate taxes in excess of $8 million, and that would not be in the "best interests" of the surviving spouse. Id. at 964. On the other hand, if the trustees had chosen to decline to make the QTIP election, then the "best interests" of the surviving spouse would permit the accumulation of income.

Petitioner is asking this Court to do something that the Court of Appeals in Ellingson did not do. Petitioner asks us to find that the trustees are required to pay all of the income from the trust to Mrs. Rapp on the ground that it is in Mrs. Rapp's "best interests", for the trust to qualify for the marital deduction. Unlike the Ellingson case, however, there is no evidence in the trust instrument that the decedent intended such result. Therefore, the Ellingson case does not govern this one. In fact, the Court of Appeals specifically distinguished its opinion from Wisely v. United States, 893 F.2d 660 (4th Cir. 1990); Estate of Doherty v. Commissioner, 95 T.C. 446 (1990); and Estate of Nicholson v. Commissioner, 94 T.C. 666 (1990), which it described as cases in which there was "no clearly manifested intent" in the instrument that the trust

property qualify as QTIP.  See Estate of Ellingson v. Commissioner, 964 F.2d at 964-965.

Petitioner also cites Estate of Mittleman v. Commissioner, 522 F.2d 132 (D.C. Cir. 1975), revg. T.C. Memo. 1973-112, in support of its position.  That case was decided before the QTIP provisions were enacted.  It involves section 2056(b)(5), which contains a similar requirement to the definition of qualifying income interest for life found in section 2056(b)(7)(B)(i)(II).  Section 2056(b)(5) permits a marital deduction with respect to property in which the surviving spouse is given a life estate with a general power of appointment.  It requires the surviving spouse to be "entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals".  Sec. 2056(b)(5).

In Estate of Mittleman, supra at 133 n.1, the decedent's will gave the residue of his property to a trust "To provide for the proper support, maintenance, welfare and comfort" of his surviving spouse for her entire lifetime.  The issue in that case was whether the quoted language conveyed all of the income from the trust payable annually or at more frequent intervals.  After examining

the language of the will as a whole, as well as extrinsic evidence, the court found "beyond peradventure that the testator intended a gift of the entire trust income to the wife, and distribution thereof promptly enough to qualify the trust property for the marital deduction."  Id. at 137. Therefore, Estate of Mittleman, is not apposite to this case in which, as discussed above, our examination of the language of the will and extrinsic evidence fails to show that the decedent intended Mrs. Rapp to receive all the income from the trust property payable annually or at more frequent intervals.

For the foregoing reasons, we find that the property distributed to the testamentary trust created under the decedent's 1986 will is not QTIP and is not eligible to be included in the marital deduction claimed by petitioner for Federal estate tax purposes.  To reflect that finding and concessions of the parties,

Decision will be entered

under Rule 155.